Zack Broslavsky (State Bar No. 241736)
Jonathan A. Weinman (State Bar No. 256553)
BROSLAVSKY & WEINMAN, LLP
1500 Rosecrans Ave., Suite 500
Manhattan Beach, CA 90266
Phone: (310) 575-2550
Fax: (310) 464-3550

Jeremy M. Glapion
THE GLAPION LAW FIRM, LLC
1704 Maxwell Drive
Wall, New Jersey 07719
Tel: 732.455.9737
Fax: 732.965.8006
jmg@glapionlaw.com
(*Pro Hac Vice* to be filed)

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RORY FITZPATRICK**, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**SAVE ADVISERS, LLC; INDIVIDUAL DOE,**<br><br>Defendants. | Civil Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>(1) **VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c)**<br><br>(2) **VIOLATIONS OF THE TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d)** |


**INTRODUCTION**

1. This action arises out of Defendant Save Advisers, LLC's ("Save") and Individual Doe's ("Doe") (collectively, "Defendants") practice of sending telephone solicitations to consumers whose numbers are on the National Do-Not-Call Registry, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c), through the regulation promulgated thereunder and found at 47 C.F.R. § 64.1200(c).

2. In addition, Defendant Save lacks the policies, procedures, and training required prior to initiating telemarketing texts, leading directly to the violations at issue here. This constitutes a separate violation of 47 U.S.C. § 227(c) through the regulation promulgated thereunder and found at 47 C.F.R. § 64.1200(d).

3. Specifically, on at least two occasions, Plaintiff Fitzpatrick asked Defendant Save, in writing, to "stop" texting him but the texts continued.

4. The number to which Defendant Save sent the texts was placed on the Do-Not-Call Registry on May 1, 2006.

5. Accordingly, Plaintiff brings this action on behalf of himself and two classes of similarly situated individuals under 47 U.S.C. § 227(c).

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the TCPA, which is a federal statute.

7. The Court has supplemental jurisdiction over Plaintiffs' CIPA claim pursuant to 28 U.S.C. § 1367.

8. This Court has jurisdiction over Defendants because Defendants conduct business transactions in this District, has committed tortious acts in and from this District, and Defendant Save is headquartered in this district, and has offices located in this District.

9. Venue is proper in this District because Defendants conduct significant amounts of business transactions within this District, Defendant Save is

headquartered in this district and has offices located in this District, and because some of the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## PARTIES

10. Plaintiff Fitzpatrick is, and at all times mentioned herein was, a citizen and resident of Pasadena, California.

11. Plaintiff Fitzpatrick is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

12. Defendant Save is, and at all times mentioned herein was, a Delaware corporation headquartered at 4306 Yoakum Blvd, Suite 650, Houston, Texas 77006.

13. Defendant Save is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

14. Defendant Individual Doe is the currently unknown individual responsible for oversight and management of the text messaging campaign that resulted in the unlawful texts described herein.

15. Defendant Individual Doe is, upon information and belief, a "person" as defined by 47 U.S.C. § 153 (39).

## TCPA

16. The TCPA was passed in 1991 to help prevent unwanted telephone calls and solicitations, provide power to consumers to prevent unwanted solicitations, and rein in unrestricted telemarketing. *See* 47 U.S.C. § 227, *et seq.*

17. Relevantly, the TCPA provides private rights of action for two types of telemarketing-related conduct.

18. First, the TCPA establishes a national "do not call" database of numbers not to be called. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014 ("DNC Order").

19. These regulations are codified at 47 CFR 64.1200(c)(1-2).

20. Specifically, a company may not initiate any "telephone solicitation" to

a telephone subscriber "who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 CFR 64.1200(c)(2).

21. "Telephone solicitation" is "the initiation of a telephone call … for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services", but excludes calls made with prior express consent, pursuant to an established business relationship, or by a non-profit organization. 47 C.F.R. § 64.1200(f)(15).

22. A violation of 47 C.F.R. § 64.1200(c) carries statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

23. Second, the TCPA requires companies to implement and maintain policies and procedures for an internal, company-specific do-not-call list.

24. These regulations are codified at 47 C.F.R. § 64.1200(d).

25. Specifically, a person or entity may not "initiate any call for telemarketing purposes … unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." *Id.*

26. The procedures must, at minimum, include a written policy, available upon demand, for maintaining a do-not-call list; training of personnel engaged in any aspect of telemarketing on the existence and use of the do-not-call list; and documenting and honoring do-not-call requests.

27. "Telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person.

28. This definition is *broader* than the definition of "telephone solicitation", as it contains no exclusions for calls made with consent or pursuant to an established business relationship.

29. Accordingly, while only telemarketing calls without consent are

3
**CLASS ACTION COMPLAINT**

actionable under 47 C.F.R. § 64.1200(c), any telemarketing call made without the proper policies and procedures is actionable under 47 C.F.R. § 64.1200(d).

30. A violation of 47 C.F.R. § 64.1200(d) carries additional statutory damages of $500 to $1,500 per call through § 227(c) of the TCPA.

31. Text messages receive the same consumer protections as voice calls. *See, e.g. In re Rules & Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 8016 (2015).

## **PLAINTIFF'S FACTS**

32. Plaintiff's telephone number is 206-###-1390.[1]

33. Plaintiff's telephone number is a Verizon Wireless telephone number.

34. Plaintiff's telephone number has been on the National Do-Not-Call Registry since May 1, 2006.

35. Plaintiff placed his telephone number on the National Do-Not-Call Registry.

36. On August 9, 2022, Plaintiff received the following text from shortcode telephone number 47959:

> Save Market Savings has launched. Sign up now to earn a target return of 2x more than traditional savings accounts: https://go.joinsave.com/TSuDx

37. On August 13, Plaintiff received the following text from shortcode telephone number 47959:

> Does your bank offer 4.45% APY? It is time to expect more from your savings: https://go.joinsave.com/0qBHT

38. Plaintiff responded to this text message with the word "Unsubscribe" followed by a separate text message with the word "STOP".

39. Plaintiff received a response stating:

---

[1] The full number has been provided to Defendant Save prior to filing and is available in discovery. It is redacted in part here for privacy purposes.

You are unsubscribed from Save. No more messages will be sent. Help at support@joinsave.com or 713-855-2839.

40. Nevertheless, on August 23, Defendants sent another text message stating:

Save: Market Savings 2- and 5-year terms launched! Earn up to a 9.43% annual target return on your FDIC-insured deposits today: https://go.joinsave.com/sPa1O.

41. On August 24, Plaintiff sent an email to support@joinsave.com stating that he would like to be unsubscribed from text messages.

42. On August 24, Defendant Save's employee responded that it opened a support request with its technical team about this issue.

43. Yet again, however, Defendants sent another marketing text on September 23, which stated:

Save: Fed raised rates. We did, too. FDIC-insured Market Savings 1-year term climbed to 5.36% avg. return:* https://go.joinsave.com/i1Gb8.

44. The entire text message exchange can be seen in the following screenshot (with the referenced Friday, 11:03 being September 23):



5
**CLASS ACTION COMPLAINT**

45. Each of Defendant Save's text messages, except for the two unsubscribe confirmations, qualify as "telemarketing", as they were sent for the purpose of encouraging Plaintiff's purchase or investment in its banking/investment services.

46. On September 27, 2022, Plaintiff, through counsel, contacted Defendant Save's CEO, Michael Nelskyla, to learn what had occurred and open a dialogue pre-litigation.

47. Mr. Nelskyla had Defendant Save's Chief Compliance Officer, Stephen Conneely, email Plaintiff, through counsel.

48. Mr. Conneely indicated that it had "fixed an issue" on August 19 to correct a glitch where opt-outs were not functioning properly.

49. Mr. Conneely stated that it had records of Plaintiff's opt-out attempts on August 13, but because of the glitch, both instances did not work.

50. Mr. Conneely then incorrectly claimed that Plaintiff received no more marketing text messages from Save after August 23.

51. When confronted with the email opt out on August 24 and the September 23 text, Mr. Conneely claimed that the dev team believed no further action was needed and that, if Plaintiff had simply opted out after the August 23 text, it would have worked.

52. Plaintiff then, through counsel, asked why, when the glitch was fixed, Defendants continued to send marketing messages to *everyone* rather than retroactively opt out those who had opted out while the purported glitch existed.

53. Plaintiff also in this email asked if Defendant Save had any written do-not-call policy or training.

54. Mr. Conneely did not respond.

55. Plaintiff followed up on September 28.

56. Mr. Conneely, to date, has still not responded.

57. Plaintiff opted out from Defendant's texts no later than August 13,

2022, and Defendant Save acknowledged this opt out on the same day.

58. As such, Defendant Save had no consent to continue sending its text messages.

59. Accordingly, Defendant Save's text messages were also telephone solicitations, as Plaintiff's revocation of consent eliminated any consent and terminated any established business relationship with Defendant.

60. Defendant's telephone solicitations to Plaintiff's telephone number on the National Do-Not-Call Registry violate 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c).

61. For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c), Plaintiff is entitled to $500 per call.

62. Plaintiff is entitled to $1,500 per call for violations of § 227(c) through 47 C.F.R. § 64.1200(c) if the Court finds that the violations were knowing and/or willful.

63. In addition, Defendant Save lacked the policies, procedures, and training required under 47 C.F.R. § 64.1200(d).

64. Among other things, Defendant Save did not have a written do-not-call policy at the time of its text messages to Plaintiff (at least not one available upon demand), as required by 47 C.F.R. § 64.1200(d)(1), because, when requested, Defendant Save's Chief Compliance Officer ignored this request.

65. Defendant Save also does not appear to have trained its employees on honoring opt-out requests, as required by 47 C.F.R. § 64.1200(d)(2), as when Plaintiff made an opt-out request via email, Defendant Save did nothing other than open a support ticket.

66. Finally, Defendant Save did not record, honor, or maintain Plaintiff's do-not-call requests, as required by 47 C.F.R. § 64.1200(d)(3) and (6).

67. Specifically, Defendant Save's actions after fixing the purported "glitch" make it impossible for it to have complied with § 64.1200(d)(3) and (6).

68. If Defendant Save had recorded Plaintiff's do-not-call request as required, it violated § 64.1200(d)(3) and (6) by continuing to send telemarketing messages to Plaintiff after recording this request.

69. If Defendant Save had *not* recorded Plaintiff's do-not-call request, as required, it violated § 64.1200(d)(3) and (6).

70. While it is likely true that Defendant Save sought to automate its internal do-not-call procedures, this decision does not absolve it from liability when this automation does not function correctly.

71. Defendant Save, on realizing the glitch, could have and should have taken manual action to honor Plaintiff's previous opt-out requests that it was required to record, rather than just continuing its text messaging program as if nothing happened.

72. In addition, *someone* became aware of the glitch whereby opt-outs were not honored; *someone* ostensibly ordered the glitch to be fixed; and *someone* ordered the marketing to continue even to persons who may have previously opted out (or allowed it to continue despite awareness of the glitch).

73. That "someone" is Individual Doe, to be properly named at a later date pursuant to 47 U.S.C. § 217, which makes "any officer" personally liable for the "act, omission, or failure … within the scope of his employment" that violates the TCPA.

74. Individual Doe is therefore jointly responsible for the telephone solicitations to a telephone number on the National Do-Not-Call Registry *and* for telemarketing texts in the absence of the required policies, procedures for, and honoring of, do-not-call requests.

75. For violations of 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d), Plaintiff is entitled to an additional $500 per call.

76. Plaintiff is entitled to an additional $1,500 per call for violations of § 227(c) through 47 C.F.R. § 64.1200(d) if the Court finds that the violations were

knowing and/or willful.

77. As a result of Defendants' conduct, Plaintiff suffered a nuisance, annoyance, wasted time (in having to respond "stop" to Defendants' messages), and device storage used by Defendants' unwanted text messages.

## CLASS ACTION ALLEGATIONS

78. Plaintiff brings this action under Fed. R. Civ. P. 23 on behalf of a class preliminarily defined as follows:

> Since November 18, 2018, all persons in the United States to whose telephone number Defendant Save sent two or more text messages within a 12-month period containing an https://go.joinsave.com link *after* that telephone number had previously sent a text message containing any word or phrase that Defendant Save's system was intended to, or did, recognize as an unsubscribe request, including, but not limited to, "stop".

79. Plaintiff also preliminarily defines a subclass as:

> Since November 18, 2018, all persons in the United States to whose telephone number Defendant Save sent two or more text messages within a 12-month period containing an https://go.joinsave.com link *after* that telephone number had previously sent a text message containing any word or phrase that Defendant Save's system was intended to, or did, recognize as an unsubscribe request, including, but not limited to, "stop", when the aforementioned telephone number was on the National Do-Not-Call Registry at the time of the texts.

80. Excluded from the Class and Subclass are Defendants and any entities in which Defendants have a controlling interest; Defendants' agents and employees; any Judge and Magistrate Judge to whom this action is assigned and any member of their staffs and immediate families, and any claims for personal injury, wrongful death, and/or emotional distress.

81. The Class Members for whose benefit this action is brought are so

numerous that joinder of all members is impracticable.

82. The exact number and identities of the persons who fit within the Class and Subclass are ascertainable in that Defendants maintain written and electronically stored data showing, or said information is publicly available showing:

    a. The telephone numbers to which they sent a text message;

    b. The content of the text messages sent to those telephone numbers;

    c. The content of the text messages those telephone numbers sent to Defendant Save;

    d. The time period(s) during which Defendant Save sent its text messages;

    e. The telephone numbers that were on the National Do-Not-Call Registry.

    f. The names and addresses associated with each Class Member telephone number.

83. The Class and Subclass are comprised of thousands of individuals nationwide.

84. There are common questions of law and fact affecting the rights of the Class and Subclass, including:

    a. Whether Defendant Save sent telemarketing text messages;

    b. Whether Defendant Save honored opt-out requests;

    c. Who was responsible for maintaining Defendant Save's text messaging campaign and ordering it to stop or continue;

    d. Whether Defendant Save had the required policies and procedures in place to honor opt-out requests;

    e. Whether Plaintiff and the Class and Subclass were damaged, and the extent of damages for such violations; and

    f. Whether Defendant should be enjoined from engaging in such conduct in the future.

85. Plaintiff is a member of both the Class and Subclass as Defendant Save sent him more than one text message containing a go.joinsave.com link within a 12-month period *after* his opt-out request (which was recognized by Defendant Save's system), and his number was on the National Do-Not-Call Registry at the time of the texts.

86. Plaintiff's claims are typical of the claims of the Class and Subclass in that they arise from Defendants' uniform conduct and are based on the same legal theories as these claims.

87. Plaintiff has no interests antagonistic to, or in conflict with, the Class or Subclass.

88. Plaintiff will thoroughly and adequately protect the interests of the Class and Subclass, having retained qualified and competent legal counsel to represent themselves and the Class and Subclass.

89. Defendants have acted and refused to act on grounds generally applicable to the Class and Subclass, thereby making injunctive and declaratory relief appropriate for the Class and Subclass.

90. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

91. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, *inter alia*, the damages suffered by each class member make individual actions uneconomical.

92. Common questions will predominate, and there will be no unusual manageability issues.

93. All Class and Subclass members have necessarily suffered injury-in-fact fairly traceable to Defendants' conduct, as each has suffered a nuisance, annoyance, wasted time (in having to respond "stop" to Defendants' messages), and device storage used by Defendants' unwanted text messages.

# FIRST CAUSE OF ACTION

**Violations of the TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(d)**

**(On Behalf of Plaintiff and the Class)**

94. Defendant Save lacked the policies, procedures, and training required under 47 C.F.R. § 64.1200(d).

95. Among other things, Defendant Save did not have a written do-not-call policy at the time of its text messages to Plaintiff (at least not one available upon demand), as required by 47 C.F.R. § 64.1200(d)(1), because, when requested, Defendant Save's Chief Compliance Officer ignored this request.

96. Defendant Save also does not appear to have trained its employees on honoring opt-out requests, as required by 47 C.F.R. § 64.1200(d)(2), as when Plaintiff made an opt-out request via email, Defendant Save did nothing other than open a support ticket.

97. Finally, Defendant Save did not record, honor, or maintain Plaintiff's do-not-call requests, as required by 47 C.F.R. § 64.1200(d)(3) and (6).

98. Specifically, Defendant Save's actions after fixing the purported "glitch" make it impossible for it to have complied with § 64.1200(d)(3) and (6).

99. If Defendant Save had recorded Plaintiff's do-not-call request as required, it violated § 64.1200(d)(3) and (6) by continuing to send telemarketing messages to Plaintiff after recording this request.

100. If Defendant Save had *not* recorded Plaintiff's do-not-call request, as required, it violated § 64.1200(d)(3) and (6).

101. Accordingly, in sending two or more telemarketing text messages to Plaintiff's and Class Members' telephone numbers after Plaintiff and Class Members asked Defendant to stop, Defendant Save violated 47 U.S.C § 227(c) through 47 C.F.R. § 64.1200(d).

102. In allowing telemarketing text messages in the absence of the required policies and procedures, especially after the purported glitch was fixed and

1 Individual Doe should have been aware that there were previous opt outs continuing to receive telemarketing text messages, Individual Doe is jointly and severally liable for these violations under 47 U.S.C. § 217.

103. Plaintiff and Subclass Members are entitled to an award of $500 in statutory damages per text for violations of 47 C.F.R. § 64.1200(d) pursuant to 47 U.S.C. § 227(c)(5).

104. Plaintiff and Subclass Members are entitled to an award of treble damages in an amount up to $1,500 text message if the Court finds Defendants' actions to be willful.

## SECOND CAUSE OF ACTION

**Violations of the TCPA, 47 U.S.C. § 227(c) through 47 C.F.R. § 64.1200(c)**

**(On Behalf of Plaintiff and the Subclass)**

105. Plaintiff's telephone number has been on the National Do-Not-Call Registry since May 1, 2006.

106. In sending two or more telemarketing text messages to Plaintiff's and Class Members' telephone numbers, which were on the National Do-Not-Call Registry, after Plaintiff and Class Members asked Defendant to stop, Defendant Save violated 47 U.S.C § 227(c) through 47 C.F.R. § 64.1200(c).

107. In allowing telemarketing text messages to numbers on the National Do-Not-Call Registry, Individual Doe is jointly and severally liable for these violations under 47 U.S.C. § 217.

108. Plaintiff and Class Members are entitled to an award of $500 in statutory damages per text for violations of 47 C.F.R. § 64.1200(c) pursuant to 47 U.S.C. § 227(c)(5).

109. Plaintiffs and Class Members are entitled to an award of treble damages in an amount up to $1,500 text message if the Court finds Defendants' actions to be willful.

F

# PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Fitzpatrick, individually and on behalf of the Class and Subclass, prays for the following relief:

A. An order certifying the Class and Subclass, to be finally defined on a Motion for Class Certification; appointing Plaintiff as Class Representative; and appointing his counsel as Class Counsel;

B. An order declaring that Defendants' actions, as set out above, violate 47 U.S.C. § (c);

C. An order that Individual Doe is jointly and severally liable for these violations;

D. An award of injunctive and other equitable relief as necessary to protect the interests of the Class and Subclass, including, *inter alia*, an order prohibiting Defendants from engaging in the wrongful and unlawful acts described herein;

E. An award of statutory damages for violations of 227(c);

F. An award of treble damages under § 227(c);

G. Such other and further relief permitted by the aforementioned statutes or that the Court deems reasonable and just.

# JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

Dated: November 18, 2022

By:  s/ Zack Broslavsky

Zack Broslavsky (Bar No. 241736)
**Broslavsky & Weinman, LLP**
1500 Rosecrans Ave., Suite 500
Los Angeles, CA 90266
Telephone: 310-575-2550
zbroslavsky@bwcounsel.com